1

2  **BORISON FIRM, LLC.**
   Scott C. Borison (State Bar No. 289456)
3  *scott@borisonfirm.com*
   1900 S. Norfolk St Ste 350
4  San Mateo CA 94403
   Telephone: (301) 620-1016
5  Facsimile: (301) 620-1018

6

7  **SHEEHAN & ASSOCIATES, P.C.**
   Spencer Sheehan (admitted *pro hac vice*)
8  60 Cuttermill Rd Ste 409
   Great Neck, NY 11021-3409
9  Tel: (516) 268-7080
   spencer@spencersheehan.com
10

11

12 *Counsel for Plaintiff and the Proposed Class*

13               **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
14

15 | EUGINA HARRIS, individually, and on | Case No. 3:20-cv-06533-RS |
16 | behalf of all others similarly situated, | |
   | | **MEMORANDUM OF POINTS AND** |
17 | Plaintiff, | **AUTHORITIES IN OPPOSITION TO** |
   | vs. | **DEFENDANT'S MOTION TO DISMISS** |
18 | | |
19 | MCDONALD'S CORPORATION | Date:  February 18, 2021 |
   | | Time: 1:30 p.m. |
20 | Defendant. | Courtroom:  3, 17th Fl |
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 1

STATEMENT OF FACTS .......................................................................................... 1

LEGAL STANDARDS ............................................................................................... 3

ARGUMENT .............................................................................................................. 4

I.      Plaintiff's Allegations are Plausible ............................................................... 4

        A.      The Products Contain Undisclosed Artificial Flavor .......................... 6

        B.      Consumers Expect a Flavor Representation to Tell them the Source of the
                Flavor and Disclose any Artificial Flavor it Resembles ...................... 10

        C.      Defendant Cannot Disclaim the Prominent "Vanilla" Representation Through
                an Ingredient List .............................................................................. 11

        D.      Defendant's Citations are to Non-Binding Authorities that are Factually
                Distinct ............................................................................................... 13

        E.      Regulations Cited in the Complaint are Applicable Because they are Unrelated
                to Nutrition Labeling ......................................................................... 15

II.     Plaintiff Fulfilled Her Requirement Of A Pre-Suit Demand Notice ................ 16

III.    Plaintiff is Entitled to Equitable Relief .......................................................... 20

IV.     Plaintiff has Standing to Bring Claims for Monetary and Injunctive Relief ....... 21

        A.      Plaintiff Has Plausibly Alleged an Economic Injury ........................... 21

        B.      Plaintiff has Standing for Injunctive Relief ......................................... 22

CONCLUSION .......................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Aberin v. Am. Honda Motor Co., Inc.,*

4
   No. 16-cv-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ....................................21

5
*Allred v. Frito-Lay N. Am., Inc.,*
   No. 17-cv-1345 (JLS) (BGS), 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ............................8

6

7
*Andriesian v. Cosmetic Dermatology, Inc.,*
   No. 3:14-cv-01600-ST, 2015 WL 1925944 (D. Or. Apr. 28, 2015) .........................................12

8

9
*Asghari v. Volkswagen Grp. of Am., Inc.,*
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ....................................................................................16

10
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................3

11
*Augustine v. Talking Rain Beverage Co., Inc.,*
   386 F. Supp. 3d 1317 (S.D. Cal. 2019) ...................................................................................8

12

13
*Becerra v. Dr. Pepper/Seven Up, Inc.,*
   945 F.3d 1225 (9th Cir. 2019) .................................................................................................11

14

15
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................................3

16
*Bell v. Publix Super Markets, Inc.,*
   No. 19-2581, 2020 WL 7137786 (7th Cir. Dec. 7, 2020) .........................................................5

17

18
*Brady v. Bayer Corp.,*
   26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (Ct. App. 2018).................................................15

19
*Branca v. Bai Brands, LLC,*

20
   No. 3:18-cv-00757(BEN) (KSC), 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ...................8, 9

21
*Cactus Corner, LLC v. US Dept. of Agriculture,*
   346 F. Supp. 2d 1075 (E.D. Cal. 2004) ...................................................................................14

22

23
*Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009) ....................................22

24
*Clark v. Westbrae Natural, Inc.,*
   No. 20-cv-3221 (JSC), 2020 U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) .................13

25
*Cohen v. East West Tea Company, LLC,*

26
   No. 17-cv-2339-JLS-BLM, 2018 WL 3656112 (S.D. Cal. Aug. 2, 2018)...............................10

27
*Conley v. Gibson,*
   355 U.S. 41 (1957) ...................................................................................................................3

28

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .........................................22, 23

*Davison v. Santa Barbara High Sch. Dist.*,
   48 F. Supp. 2d 1225 (C.D. Cal. 1998) ...................................................................................4

*Deras v. Volkswagen Group of America, Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018)........................................................................21

*Dumont v. Reilly Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ...................................................................................................5

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010)...................................................................................7

*Engurasoff v. Coca-Cola Co.*,
   No. 13-cv-03990 (JSW), 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) .................................8

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007)..................................................................................7

*Goldman v. Bayer AG*,
   No. 17-cv-0647-PJH, 2017 U.S. Dist. Lexis 117117 (N.D.Cal., July 26, 2017) .....................15

*Gross v. Vilore Foods Co.*,
   No. 3:20-cv-00894-DMS-JLB, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ........................21

*Hall v. Diamond Foods, Inc.*,
   No. 14-cv-02148-MMC, 2014 WL 5364122 (N.D. Cal. Oct. 21, 2014)..................................13

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .........................................................................5

*Henderson v. The J.M. Smucker Company*,
   No. 2:10-cv-04524-GHK-VBK, 2011 WL 1050637 (C.D. Cal Mar. 17, 2011) ...............12, 19

*Hilsley v. Gen. Mills, Inc.*,
   376 F. Supp. 3d 1043 (S.D. Cal. 2019) ..............................................................................8, 9

*Howard v. Bayer Corp.*,
   No. 4:10-cv-1662-DPM, 2011 U.S. Dist. Lexis 161583 (E.D.Ark., July 22, 2011 .................15

*Ivie v. Kraft Foods Global, Inc.*,
   No. 12-cv-2554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ......................................9

*Kasky v. Nike, Inc.*,
   45 P.3d 243 (Cal. 2002)..........................................................................................................5

*Keilholtz v. Superior Fireplace Co.*,
   No. 08-cv-00836-CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .....................................20

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................4

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ...............................................22

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ..................................................................................................5

*Martin v. Tradewinds Beverage Co.*,
    No. 2:16-cv-09249-PSG-MRW, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) .....................12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......................................................22

*McCellen v. Fitbit, Inc.*,
    No. 3:16-cv-0036-JD, 2018 WL 2688781 (N.D. Cal. June 5, 2018) ....................................16

*Outboard Marine Corp. v. Superior Court*,
    52 Cal.App.3d 30, 124 Cal.Rptr. 852 (1975) .....................................................................18

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) ..................................................................................16

*Pichardo v. Only What You Need, Inc.*,
    No. 20-cv-0493 (VEC), 2020 U.S. Dist. LEXIS 199791
    (S.D.N.Y. Oct. 27, 2020)......................................................................................................13

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................................................................11

*Sagan v. Apple Computer, Inc.*,
    874 F. Supp. 1072 (C.D. Cal. 1994)......................................................................................4

*Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-08338, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017)........................................................................................................................15

*Shank v. Presidio Brands, Inc.*,
    No. 17-cv-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018)................................12

*Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*,
    __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020)13

*Silva v. Unique Beverage Co., LLC*,
    No. 3:17-cv-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017) .....................................11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)..........................................................................................20, 21

*Spirtos v. Allstate Inc., Co.*,
    2003 WL 25900368 (C.D. Cal. Jan. 10, 2003).....................................................................20

*Starbuck v. City of San Francisco,*
　　556 F.2d 450 (9th Cir.1977) .................................................................................. 14

*Starr v. Baca,*
　　652 F.3d 1202 (9th Cir. 2011) ................................................................................. 4

*Steele v. Wegmans Food Markets, Inc.,*
　　No. 19-cv-09227, 2020 WL 3975461 (S.D.N.Y. Jul. 14 2020) ......................... 11, 13

*Tucker v. Post Consumer Brands, LLC,*
　　No. 19-cv-03993-YGR, 2020 WL 1929368 (N.D. Cal. April 21, 2020) ............ 12, 23

*Victor v. R.C. Bigelow, Inc.,*
　　No. 13-cv-02976-WHO, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ................. 19

*Vizcarra v. Unilever United States, Inc.,*
　　No. 4:20-cv-02777, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ........................... 8

*Von Grabe v. Sprint PCS,*
　　312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................... 18

*Williams v. Gerber Prods. Co.,*
　　552 F.3d 934 (9th Cir. 2008) ................................................................................... 5

*Workman v. Plum Inc.,*
　　141 F. Supp. 3d 1032 (N.D. Cal. 2015) ................................................................. 11

*Zaragoza v. Apple Inc.,* No. 18-cv-06139-PJH, 2019 WL 1171161 (N.D. Cal March 13, 2019). 21

**STATUTES**

21 U.S.C. § 343 ............................................................................................................. 7

Cal. Health & Saf. Code Section 110290 ....................................................................... 7

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4

**REGULATIONS**

21 C.F.R. § 101.9(a) ..................................................................................................... 15

21 C.F.R. § 101.9(c) ..................................................................................................... 15

21 C.F.R. § 101.9(j)(2)(i) .............................................................................................. 15

21 C.F.R. § 101.9(j)(2)(ii) ............................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1      In compliance with Northern District of California Local Rule 7-4, Plaintiff Eugina Harris

2  ("Plaintiff"), through her undersigned counsel, respectfully submit the following opposition to the

3  motion filed by Defendant McDonald's Corporation ("Defendants") to dismiss Plaintiff's Class

4  Action Complaint ("Complaint" or "Compl."), Dkt 1. Defendant asks this Court to dismiss the

5  entirety of Plaintiff's Complaint. *See* Defendant's Notice of Motion and Motion to Dismiss

6  Plaintiff's Complaint; Memorandum of Points and Authorities In Support Thereof ("Def. Mem."),

7  Dkt 29. Defendant's arguments should be rejected for the reasons set forth below.

8                    **STATEMENT OF ISSUES TO BE DECIDED**

9      1.      Does Plaintiff state a claim under the UCL, FAL, and CLRA where Plaintiff alleges

10  that a reasonable consumer would understand "Vanilla" without qualification to represent that an

11  ice cream cone is made with real vanilla where the ice cream cone is made predominantly or

12  exclusively with added vanilla from non-vanilla bean sources?

13      2.      Has Plaintiff sufficiently asserted economic injury by alleging that she spent money

14  that, absent Defendants' actions, he would not have spent, which the Ninth Circuit has found to be

15  a quintessential injury-in-fact?

16      3.      Did Plaintiff provide the required pre-suit notice to Defendant?

17      4.      Can Plaintiff assert claims for equitable relief?

18      5.      Does Plaintiff have standing for injunctive relief where she has made plausible

19  allegations regarding the threat of future harm?

20                          **STATEMENT OF FACTS**

21      Defendant markets its soft serve ice cream or reduced fat ice cream purporting to be

22  flavored only by vanilla under the McDonald's brand (the "Product'). *See* Compl. at ¶ 1. On

23  Defendant's menu boards and kiosks, the Product is labeled "Vanilla" or "Vanilla Cone" without

24  qualification. Compl. at ¶ 3; *see* below ("Vanilla Cone" representation circled).

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13



14  Consumers want the vanilla in vanilla-flavored products to come from a real source, *i.e.,*
15  from vanilla beans from the vanilla plant. Compl. at ¶ 22. The representation of the Product as
16  "Vanilla" without qualification causes consumers, like Plaintiff, to believe that the Product is
17  vanilla flavored and the vanilla flavor comes exclusively, if not predominantly, from the vanilla
18  plant. Compl. at ¶¶ 4, 6. Consumers reasonably believe that the "Vanilla" representation, without
19  qualification, means that, with respect to the vanilla flavor, the flavor is from the vanilla plant.
20  Compl. at ¶ 59.

21  Unfortunately for consumers, Defendants' "Vanilla" representation is false and
22  misleading. Specifically, scientific testing of the products revealed that the vanilla flavoring of the
23  Products does not come exclusively or predominantly from the vanilla plant. Rather, the opposite
24  is true. The testing revealed that the predominant, if not exclusive, source of the vanilla flavor is
25  from added vanillin not from the vanilla plant. Compl. at ¶ 43. Given the absence of certain marker
26  compounds and the high level of vanillin, if the Products contains any real vanilla at all, it is in
27  trace or *de minimis* amounts not detectable by even advanced scientific means. Compl. at ¶¶ 42-

28

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
*Harris v. McDonald's Corporation*, No. 3:20-cv-06533-RS
2

50.

As a result of the misleading labeling at issue, the Products are sold at a premium price, as compared to similar products. Compl. at ¶ 7.

Plaintiff purchased the Product on multiple occasions. Compl. at ¶ 13. Plaintiff saw the "Vanilla" representation and relied on it to believe that the Products were flavored by vanilla from the vanilla plant. Compl. at ¶ 16. Had Plaintiff known the truth that the "Vanilla" representation was false, Plaintiff would not have purchased the Product at a premium price or bought the Product at all. Compl. at ¶ 16. If the Product was reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled, Plaintiff would purchase the Product again in the future. Compl. at ¶ 16.

Plaintiff alleges violations of both the unlawful and unfair/fraudulent prongs of the UCL, the FAL and the CLRA. Compl. at ¶¶ 86-135. Plaintiff seeks monetary damages and injunctive relief.

## LEGAL STANDARDS

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a complaint to only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Federal Rule of Civil Procedure 12(b) states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert….by motion." *See* Fed.

R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 697.

"The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time 8 Warner Cable Inc.*, No. 12-cv-06764 JGB (AJWx), 2013 WL 3337784, at *2 (C.D. 9 Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ). The liberal pleading standard applied by federal courts comports with Rule 8(e), which says, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *cf. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## ARGUMENT

## I.    PLAINTIFF'S ALLEGATIONS ARE PLAUSIBLE

Claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" standard. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (affirming dismissal where dispenser disclosed the accurate net weight of the lip product).

The consumer protection laws do not require literal falsity; only that a reasonable consumer is "likely to be deceived," which can occur even with a technically true statement. *See Kasky v.*

*Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (laws prohibit "not only advertising which is false, but also advertising which, although *true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (emphasis added); *See Henderson v. Gruma Corp.*, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("California's consumer protection laws prohibit 'advertising which, although true, is either misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public'") (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Defendant asks this Court to rule contrary to *Williams* by allowing a conspicuous, misleading statement regarding an ingredient Defendant chooses to highlight, vanilla, so long as it contains that ingredient in some minute amount or it supposedly tastes of vanilla. *Williams*, 552 F.3d at 939 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false"); *Cohen*, 2018 WL 3656112 at *3 ("Because Defendant's Products say they contain kombucha, but do not contain live organisms, it is plausible the packaging is deceiving.").

Other Courts of Appeal have recently adopted *Williams*, and support Plaintiff's position that it is plausible for consumers to expect to receive what they are promised. *Bell v. Publix Super Markets, Inc.*, No. 19-2581, 2020 WL 7137786, at *1 (7th Cir. Dec. 7, 2020) (reversing dismissal of claims that it was implausible to expect "*100% Parmesan Cheese*" to contain only parmesan cheese where shelf-stable cheese listed ingredients including cellulose) *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("We conclude that a reasonable consumer should not be expected to consult the Nutrition Facts panel [and ingredients list] on the side of the box to correct misleading information set forth in large bold type on the front of the box."); *Dumont v. Reilly Foods Co.*, 934 F.3d 35, 42 (1st Cir. 2019) (reversing district court and holding that in case involving a hazelnut creamer that "FDCA requirements effectively established custom and practice in the industry. Accordingly, it may be that a consumer's experience with that custom and practice primes her to infer from the absence of a flavoring disclosure that the product gets its characterizing

1    nutty flavor from the real nut.").

2

3

4    **A.      The Products Contain Undisclosed Artificial Flavor**

5            The Complaint alleges that the representation of the Products as "Vanilla" is "false,

6    misleading and unlawful because the vanilla soft serve ice cream is flavored by artificial vanilla in

7    the form of vanillin," yet omits "Artificial" from the product name. Compl. at ¶ 33 fn 13 citing

8    John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the

9    United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer &

10   Flavorist, Apr. 25, 2018 at 52 (citing FDA correspondence with industry member and stating that

11   ice cream flavored predominantly with vanillin "(S)hould not be named 'vanilla ice cream' or

12   'vanilla flavored ice cream' because these products are not made from vanilla beans or vanilla

13   flavors made from vanilla beans."); Compl. at ¶ 36; Compl. at ¶ 60 ("Representing the Product as

14   "Vanilla" instead of "Artificial Vanilla" or "Artificially Flavored Vanilla" is deceptive and

15   misleading to consumers."); Compl. at ¶ 36; ¶ 33.

16           Defendant claims that the presence of artificial vanillin is of no significance "because the

17   Complaint does not allege that McDonald's represented the Product to consumers as 'natural.'"

18   Def. Mem. at 10. This disregards Plaintiff's theory which is one of omission, whereby Defendant

19   had the affirmative obligation to disclose the flavor source of the vanilla ice cream. Compl. at ¶ 63

20   ("Plaintiff saw and relied on statements on the Product's advertising, which misleadingly reference

21   *only* "vanilla"") (emphasis added).

22           The labeling of the Product as "Vanilla" without qualification highlights the presence of

23   vanilla in the Product without disclosing the artificial vanilla flavoring. Compl. at ¶ 53

24   ("Defendant's Product, 'containing vanillin derived from a non vanilla bean source needs to be

25   labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored.'").

26

27

28

The FFDCA prohibits representations on food which is "false or misleading in any particular." Compl. at ¶ 88 citing 21 U.S.C. § 343, which defines "misleading" to "take[] into account (among other things)…the extent to which the labeling or advertising fails to reveal facts material;" at ¶ 95 citing California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code Section 110290 ("Sherman Law").

Defendant's omission of the word "artificial" is actionable because it "is contrary to a representation actually made by the defendant," that the Product only contained flavor from vanilla, and because it was obligated to disclose this fact. *Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting *Falk v. Gen. Motors Corp.,* 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (citing standard for omission-based claims under the UCL).

Plaintiff and consumers expected the Products "to be flavored with vanilla flavoring derived from vanilla beans unless labeled otherwise." Compl. at ¶ 33 quoting Hallagan and Drake at 35. However, Plaintiff and consumers were misled because most of the flavoring was artificial because it was "not derived from vanilla beans" yet simulated vanilla. Compl. at ¶ 32 citing International Dairy Foods Association ("IDFA"), Ice Cream & Frozen Desserts Labeling Manual, 2019 Ed.; Compl. at ¶ 54.

Since the only natural vanillin is from vanilla beans, it is misleading to omit "artificially flavored" from the term "Vanilla." Compl. at ¶ 53 ("Defendant's Product, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored.").

The FDA has long considered "natural flavor compounds that simulate vanilla but are not derived from vanilla beans as artificial flavors that simulate the natural characterizing flavor." Compl. at ¶ 34 fn 14 in Hallagan and Drake, endnote 7 citing Letter dated 9 February 1983 from FDA to FEMA constituting Advisory Opinion.

In numerous decisions, courts have denied motions to dismiss where it was plausibly alleged a food or beverage contained an undisclosed artificial flavor. *Hilsley v. Gen. Mills, Inc.,*

376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) (plaintiff's allegation that fruit snacks contained the artificial flavor "synthetic d-l malic acid [which] simulates, resembles, and reinforces the characterizing fruit flavor for the Products," and should have been disclosed based on 21 C.F.R. § 101.22(i)(2) was plausible); *Engurasoff v. Coca-Cola Co.*, No. 13-cv-03990 (JSW), 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (refusing to dismiss claims that defendants used the artificial flavor phosphoric acid to "add a tartness to Coke," yet failed to declare this fact, in violation of 21 C.F.R. § 101.22(i)(2)); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-cv-1345 (JLS) (BGS), 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (denying motion to dismiss because "The issue [of] whether malic acid is an 'artificial characterizing flavor' that reinforces or resembles the natural vinegar flavor" is "a factual determination" that "would be inappropriately resolved on a motion to dismiss."); *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757(BEN) (KSC), 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) (denying motion to dismiss where plaintiff alleged  fruit drinks contained the artificial flavor d-1-malic acid but failed to disclose this to consumers as required by law); *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1322–23 (S.D. Cal. 2019) (denying motion to dismiss where plaintiff alleged the defendant "omits the legally required 'artificially flavored' disclosure"); *see also Vizcarra v. Unilever United States, Inc.*, No. 4:20-cv-02777, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) (denying motion to dismiss where plaintiff's analytical testing showed ice cream did not contain flavor exclusively from vanilla plant).

The Complaint plausibly alleges the presence of artificial vanillin, based on the chromatography report, indicating it contained "an abnormal excess of vanillin (MS Scan # 1019, 49.765 PPM) relative to the profile of minor components in a vanilla preparation," which is a strong indicator it contains vanillin from non-vanilla sources." Compl. at ¶ 43.

Moreover, the Complaint relies on the interpretations of the ice cream flavor regulations of the flavor industry trade group, FEMA, the International Dairy Foods Association ("IDFA") and the FDA. Compl. at ¶ 34. ("The IDFA, Hallagan and Drake and FEMA point out that the regulations for vanilla products and ice cream are supplemented by a formal FDA Advisory

1   Opinion, and a collection of FDA-issued regulatory correspondence, which support this

2   conclusion") (quotation omitted).

3       "Assuming the truth of the allegations, as the Court must at the pleading stage," it is

4   plausible that "the FDA regulations require Defendants to label the [vanilla ice cream] as

5   artificially flavored" based on the added vanillin. *Hilsley*, 376 F. Supp. 3d at 1047 (citation

6   omitted).

7       Plaintiff has clearly described the regulatory requirements when vanillin is used to imitate

8   vanilla. Compl. at ¶ 53 ("Defendant's Product, "containing vanillin derived from a non vanilla

9   bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled

10  as vanilla flavored.").

11      Plaintiff alleged *why* McDonald's used artificial vanillin – because it was cheaper and not

12  subject to supply disruptions. Compl. at ¶ 26 (noting that the "disruption in available vanilla has

13  caused companies to cut corners when it comes to their premium vanilla ice cream products.").

14      Plaintiff further alleged that McDonald's failed to disclose the presence of artificial vanillin

15  in response to consumer demand for "naturally sourced vanilla" and avoidance of artificial flavors.

16  Compl. at ¶¶ 18-23 (citing multiple consumer surveys showing a large majority of consumers

17  avoid artificial flavors).

18      As other courts within this Circuit have held, "at the pleading stage, [the] Court does not

19  operate as a fact-finder, but, instead, must presume all facts plead as true." *Branca*, 2019 WL

20  1082562, at *3 (crediting plaintiff's allegations that the products contained the artificial flavor d-

21  1-malic acid); *See Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554-RMW, 2013 WL 685372, at

22  *10 (N.D. Cal. Feb. 25, 2013) (the factual determinations of whether the artificial product is used

23  as a sweetener and/or flavoring agent in the product is inappropriate for determination on a motion

24  to dismiss); *Allred*, 2018 WL 1185227, at *4-5 (whether malic acid is an "artificial flavor" or a

25  "flavor enhancer" under the federal regulations is a factual determination inappropriate at the

26  pleadings stage).

27

28

1

2

**B.    Consumers Expect a Flavor Representation to Tell them the Source of the Flavor and Disclose any Artificial Flavor it Resembles**

3

4

5

6

7

8

9

In deeming the "vanilla" representation as referring to a "flavor," Defendant disregards that flavors *come from* ingredients. Defendant's position – that "vanilla" without qualification refers to the flavor or taste – creates an ambiguity regarding how a consumer interprets the phrase "vanilla" that cannot be resolved on a motion to dismiss. *See Cohen v. East West Tea Company, LLC*, No. 17-cv-2339-JLS-BLM, 2018 WL 3656112, at *3 (S.D. Cal. Aug. 2, 2018)(denying motion to dismiss where "there is ambiguity regarding the definition of a word of the Products' labeling.").

10

11

12

13

14

15

Here, as in *Williams*, the fact that the "Vanilla" statement may technically be accurate with respect to the flavor or a small quantity of an ingredient does not make the statement unactionable as a matter of law. Plaintiff plausibly alleged that the Product's statement of "Vanilla" without qualification is likely to mislead reasonable consumers. Compl. ¶ 93 ("Representing the Product as "Vanilla" instead of "Artificial Vanilla" or "Artificially Flavored Vanilla" is deceptive and misleading to consumers.").

16

17

18

19

20

The purpose of labeling requirements is not only so consumers will know the flavor or taste of a food, but so consumers are informed of the source of that flavor. This is especially so in the case of vanilla flavors, where there has been a history of consumer deception. Compl. at ¶ 29 (requirements for vanilla labeling "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled").

21

22

23

24

Defendant's comparison of "vanilla" to "rocky road" or "tutti fruti" is off-base, because these are fanciful names which describe an assortment of flavors and inclusions. Vanilla from vanilla beans is a real ingredient, while there are no ingredients named "rocky road" and "tutti fruti." Def. Mem. at 7.

25

26

27

Defendant purports to stand in for reasonable consumers and describe it as implausible to expect "the Product's vanilla flavor comes 'only from vanilla beans.' (Compl. ¶ 16.) No *reasonable* consumer would make that leap." Def. Mem. at 6-7.

28

This conflicts with the opinion of the flavor industry representatives, who surely are at least

1   as knowledgeable as Defendant's counsel in evaluating expectations of consumers. Compl. at ¶ 33

2   ("When consumers purchase ice cream labeled as "vanilla ice cream" they expect it to be flavored

3   with vanilla flavoring derived from vanilla beans unless labeled otherwise.").

4          Nowhere in the representation of the Product does Defendant disclose it contains artificial

5   vanillin, as it is identified only as "Vanilla" and not "Artificially Flavored Vanilla." *See, e.g.*,

6   *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (dismissing claims that

7   "diet" soda "assists" in weight loss because reasonable consumers understand that "diet" describes

8   a reduced-calorie product); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)

9   (dismissing claim where the truthful amounts of ingredients were disclosed on the back of the

10  label); *Silva v. Unique Beverage Co., LLC*, No. 3:17-cv-00391-HZ, 2017 WL 4896097, at *6 (D.

11  Or. Oct. 30, 2017) (denying motion to dismiss where product identified as "coconut" lacked this

12  ingredient).

13         While Defendant cites *Red* for the proposition that a "called-out" ingredient, vegetables, is

14  not plausibly contained in an appreciable amount in a product based on wheat (crackers), the

15  analogy fails with respect to ice cream. *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3-4 (C.D.

16  Cal. Oct. 25, 2012) (holding that wheat crackers could not plausibly contain any more than a de

17  minimis amount of vegetables because crackers are made from wheat).

18         Ice cream is made up of a milk and cream base, with added flavoring. Labeling ice cream

19  as "vanilla" or "strawberry" is understood to refer to flavor from these ingredients. Plaintiff knows

20  she did not buy a "bowl of vanilla," but expects that there is vanilla in the product and the

21  representation of the flavor would be truthful and not misleading.

22         **C.     Defendant Cannot Disclaim the Prominent "Vanilla" Representation**

23                 **Through an Ingredient List**

24         Defendant contends that reasonable consumers cannot be misled because the ingredient list

25  "mentions neither vanilla beans nor extracts, but [does list] Natural Flavor." Def. Mem. at 9

26  quoting *Steele v. Wegmans Food Markets, Inc.*, No. 19-cv-09227, 2020 WL 3975461 (S.D.N.Y.

27  Jul. 14 2020) .

28

1    Plaintiff Harris alleged McDonald's Vanilla Soft Serve Ice Cream contains artificial

2    flavors, which was never alleged in *Steele*. Additionally, "artificial flavor" does not appear on the

3    ingredient list. See *Williams*, 552 F.3d at 939–40 ("[R]easonable consumers expect that the

4    ingredient list contains *more detailed* information about the product that confirms other

5    representations on the packaging.") (emphasis added).

6    Moreover, the requirement that a consumer scrutinize an ingredient list has been soundly

7    rejected at the motion to dismiss stage in this district. *See, e.g., Tucker v. Post Consumer Brands,*

8    *LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. April 21, 2020) (noting that it

9    is not the case that "the onus" is "on plaintiff to consult the ingredient list to try to discern" the

10   actual contents of the allegedly mislabeled product); *see also Shank v. Presidio Brands, Inc.*, No.

11   17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (holding that the plaintiff's

12   "ability to read the products' ingredients does not render [the defendant's] allegedly false

13   advertising that the products contain only naturally-derived ingredients any more truthful");

14   *Henderson v. J.M. Smucker Co.*, No. 10-cv-244524-GHK-VBK, 2011 WL 1050637, at *4 (C.D.

15   Cal. Mar. 17, 2011) (rejecting argument "that since partially hydrogenated vegetable oil, which

16   contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer

17   could be misled" and noting that "[a]lthough this factor may be relevant in the fact-intensive

18   reasonable consumer analysis, *Williams* instructs that such reasoning cannot be the basis for

19   granting a motion to dismiss."); *Martin v. Tradewinds Beverage Co.*, No. 2:16-cv-09249-PSG-

20   MRW, 2017 WL 1712533, at *9 (C.D. Cal. Apr. 27, 2017), *on reconsideration*, No. 16-CV-9249

21   PSG (MRW), 2018 WL 313123 (C.D. Cal. Jan. 4, 2018) (rejecting argument "that no reasonable

22   consumer could be deceived by the '100% Natural' label because an examination of the ingredient

23   list on the back side of the packaging reveals that the product contains a color additive.");

24   *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1925944 (D. Or. Apr.

25   28, 2015) (adopting report and recommendation and rejecting argument "that a reasonable

26   consumer could not be misled because the allegedly oil-based ingredients were plainly listed on

27   the product's label."); *Hall v. Diamond Foods, Inc.*, No. 14-cv-02148-MMC, 2014 WL 5364122,

28

1   at *4 (N.D. Cal. Oct. 21, 2014) ("Accordingly, the claims based on Reduced Fat Sea Salt Chips

2   are not subject to dismissal for failure to allege sufficient facts to satisfy the reasonable consumer

3   test.").

4       **D.      Defendant's Citations are to Non-Binding Authorities that are Factually
            Distinct**

5

6           Defendant's argument relies less on whether Plaintiff was misled by the artificial flavor in

7   the Products than by decisions mainly from other districts. Defendant encourages the Court to

8   engage in "herding" and "informational cascades," which "occurs among agents when their

9   decisions are decreasingly determined by their own information and increasingly determined by

10  the actions of others."[1]

11

12          In all the cases cited by Defendant, there were not the allegations present here that those

13  products contained artificial flavors. *Pichardo v. Only What You Need, Inc.*, No. 20-cv-0493

14  (VEC), 2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020) (beverage "does not mislead

15  because reasonable consumers would expect a vanilla taste, and that is exactly what they get.");

16  *Steele*, 2020 WL 3975461, at *2 (dismissing case where product purportedly tasted like vanilla);

17  *see also Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993 (VM), 2020 U.S. Dist. LEXIS

18  229294 (S.D.N.Y. Dec. 7, 2020); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-3221 (JSC), 2020

19  U.S. Dist. LEXIS 224966 (N.D. Cal. Dec. 1, 2020) *but see Vizcarra*, 2020 WL 4016810, at *1;

20

21  *Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*, __ F. Supp.3d __, No. 1:19-

22  cv-00768 (BMC), 2020 WL 4931045, at *12 (E.D.N.Y. Aug. 24, 2020) (denying motion to dismiss

23  because "ethyl vanillin, the substance plaintiffs allege is exponentially present compared to natural

24  _____

25  [1] Andrew F. Daugherty and Jennifer F. Reinganum, "Stampede to judgement: Persuasive influence
    and herding behavior by courts." *American Law and Economics Review* 1.1 (1999): 158-189.

26

27

28

vanilla, is never explicitly disclosed to consumers…Rather, it took advanced scientific testing to reveal this.").

District court decisions do not bind other district courts, even within the same district. *Cactus Corner, LLC v. US Dept. of Agriculture*, 346 F. Supp. 2d 1075, 1106 (E.D. Cal. 2004) citing *Hart v. Massanari,* 266 F.3d 1155, 1176 (9th Cir. 2001) (rejecting argument because it would imply that "district court opinions should bind district courts, at least in the same district"); *Starbuck v. City of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.").

Defendant asks the Court to follow a supposed "weight of authority" in seeking dismissal, and "rely on [this Court's] understanding of a[n] [purported] emerging majority position as the primary or even sole reason to reach a particular conclusion."[2] However, following "non-binding authority for the sake of consensus alone…assumes that the prior decisions (whether individually or collectively) reflect superior information or knowledge" sufficient to override the Court's contrary inclinations."

Defendant's emphasis on "court-counting precedent" relies on the supposed "wisdom of crowds," whereby "the majority view of a group, whose members are each better than random at making decisions, becomes more and more certain to be correct as the number of group members increases."[3]

---

[2] Maggie Gardner, Dangerous Citations (June 19, 2020). 95 N.Y.U. L. Rev. (2020 Forthcoming), SSRN.

[3] Brian Soucek and Remington B. Lamons. "Heightened Pleading Standards for Defendants: A Case Study of Court-Counting Precedent." Ala. L. Rev. 70 (2018): 875 (coining the term "court-counting" in a study of how courts apply *Twombly* and *Iqbal* to defendant's answers; discussion of Condorcet Jury Theorem).

1        There is no obligation or principle which requires one court to adopt the factual

2   determinations of another about whether a distinct representation is misleading. *See Brady v. Bayer*

3   *Corp.*, 26 Cal. App. 5th 1156, 1174, 237 Cal. Rptr. 3d 683 (Ct. App. 2018) (finding "One-A-Day

4   Vitamins misleading where the fine print disclosed the necessity to take two per day in contrast to

5   the opposite conclusion in *Howard v. Bayer Corp.*, No. 4:10-cv-1662-DPM, 2011 U.S. Dist. Lexis

6
    161583 (E.D.Ark., July 22, 2011 and *Goldman v. Bayer AG*, No. 17-cv-0647-PJH, 2017 U.S. Dist.
7

8   Lexis 117117 (N.D.Cal., July 26, 2017)).

9        Regardless of other decisions about other products in other courts, Plaintiff plausibly

10  alleged the Products contain vanillin, required to be disclosed as an artificial flavor.

11
         **E.       Regulations Cited in the Complaint are Applicable Because they are
12              Unrelated to Nutrition Labeling**

13       Defendant claims that none of the regulations cited in the Complaint have any bearing on

14  the issues in this case. Def. Mem. at 6. This stance is incorrect and stems from a misreading of the

15  relevant regulations. Defendant further states, "The FDA labeling regulations specifically exempt

16  foods 'served in restaurants' or 'in other establishments in which food is served for immediate

17  human consumption' including 'ice cream shops.'" *Id*. citing 21 C.F.R. § 101.9(j)(2)(i)-(ii).

18       These regulations, however, only apply to "nutrition information relating to food." 21

19  C.F.R. § 101.9(a). Plaintiff here does not challenge nutritional information, which includes

20  calories, fat, cholestorol, sodium, carbohydrates, dietary fiber, total sugars, added sugars, protein

21  and vitamins and minerals. 21 C.F.R. § 101.9(c)(1)-(9).

22       McDonald's mischaracterizes Plaintiff's claims. Plaintiff has not alleged that McDonald's

23  had a requirement to tell consumers how much calories, fat or protein was in the Product. Instead,

24  "Plaintiff alleges that [McDonald's] had a duty to refrain from giving its

25  products misleading names." *Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-08338, 2017

26  WL 945083, at *2 (C.D. Cal. Feb. 27, 2017) (rejecting defendant's argument that identifying its

27  donuts as "maple" and "raspberry" where they contained neither imposed any "nutrition labeling"

28

requirement). Like in *Saidan*, McDonald's "could avoid liability without making any changes to its labeling, simply by renaming its products" to disclose the presence of artificial vanilla. *Saidian*, 2017 WL 945083, at *2.

Defendant's sole authority focuses on nutrition labeling, further supporting Plaintiff's position. *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 537 (S.D.N.Y. 2003) ("Any determination in this case has nothing to do with whether Haagen-Daaz must include a label as to the *nutritional contents* of a pint of ice cream.") (emphasis added).

## II.    PLAINTIFF FULFILLED HER REQUIREMENT OF A PRE-SUIT DEMAND NOTICE

McDonald's urges dismissal with prejudice of Plaintiff's claims for damages under the CLRA for lack of pre-suit notice. Def. Mem. at 12-14. McDonald's also asks for dismissal of Plaintiff's claim under the California Unfair Competition Law ("UCL") based on this alleged notice violation. *Id.* at 16. Nowhere does McDonald's claim that the notice failed to advise it of the nature of claims or that it did not give it sufficient time to respond.

According to McDonald's, Plaintiff's counsel failed to send a written notice on behalf of Plaintiff Harris in accordance with § 1782 of the CLRA, but filed suit anyway relying on a pre-suit letter from Tiana Naples. Def. Mem. at 13 (italics in original).

Defendant suggests that this was somehow improper, yet courts in this district and other districts in the Ninth Circuit clearly have held otherwise. "It is well-established that once CLRA notice is sent on behalf of a putative class, members of the class may rely on that notice, regardless of whether they send their own CLRA letters." *In re: Volkswagen* "*Clean Diesel*" *Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC), 2020 WL 1829045 at *6 (N.D. Cal. April. 10, 2020), *See also McCellen v. Fitbit, Inc.*, No. 3:16-cv-0036-JD, 2018 WL 2688781, at *3 (N.D. Cal. June 5, 2018) (when another plaintiff provides written notice to a defendant not only on her own behalf but on behalf of "a proposed class of consumers . . . , [t]hat notice was sufficient under California law and gave [the defendant] the opportunity to cure that the CLRA contemplates."); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1317–18 (C.D. Cal. 2013) (allowing a class action plaintiff to rely on the pre-litigation notice given by a

1    fellow class member).

2    The decision in *Sanchez v. Wal–Mart Stores, Inc.*, No. Civ. S–06–cv–2573 DFL KJM,

3    2007 WL 1345706 (E.D. Cal. May 8, 2007) is directly on point. In that case, the district court

4    rejected the same argument that McDonald's makes here. The defendant argued that the named

5    plaintiff failed to comply with the notice requirement of § 1782 because she never sent them a pre-

6    suit letter. The district court, however, concluded that the defendants did receive proper pre-suit

7    notice. The district court explained:

8    > In her amended complaint, [named plaintiff Elizabeth] Sanchez alleges that another
     > class member, Salvador Sanchez, sent defendants notice on November 2, 2005. In
9    > his letter, Salvador Sanchez claimed that '[the] stroller has a dangerous and
     > defective locking mechanism pinch point which creates an unreasonable danger of
10   > personal injury to all potential users.' Moreover, Salvador Sanchez stated that he
     > was providing defendants statutory written notice, as required by the CLRA, on
11   > behalf of himself and a class of similarly situated consumers. This is sufficient to
12   > satisfy § 1782(a).

13   2007 WL 1345706, *3. Citing "the clear intent of the CLRA to provide and facilitate pre-complaint

14   settlements of consumer actions wherever possible," the court held:

15   > The 2005 notice, although it came from another class member, nonetheless satisfied
16   > § 1782(a) because it notified defendants of the stroller's alleged defect and of a
     > potential class action lawsuit.

17   *Id.*

18   The relevant facts are the same here as in *Sanchez*. Defendant concedes that "[o]n August

19   17, 2020, *Tiana Naples* sent a Consumer Legal Remedies Notice via certified mail, return receipt

20   requested, from Plaintiff's Counsel." Def. Mem. at 13 (citing Complaint, Dkt 1, at ¶ 131)

21   (emphasis in original).

22   In that letter, Ms. Naples clearly stated that "this letter constitutes the required 30-day

23   notice before claims for damages may be filed under the California Consumer Legal Remedies

24   Act." *See* Exhibit A, CLRA Letter at 4. She then gave McDonald's notice that its "[vanilla ice

25   cream] Products are in violation of California consumer laws because they are "misbranded and

26   deceptively marketed," specifically because the Products fail to disclose on the menu boards,

27   kiosks and other signage that the label that they use artificial vanilla flavor. Exhibit A, CLRA

28

1  Letter at 2 (citing "McDonald's use of undisclosed non-vanilla, artificial flavors").

2      Ms. Naples clearly and repeatedly notified McDonald's that she is sending the letter-notice

3  "on behalf of herself, all others similarly situated, and the general public." Exhibit A, CLRA Letter

4  at 3.

5      Both the CLRA letter of Ms. Naples and this action, brought by Plaintiff Harris, allege that

6  Defendant falsely and misleadingly markets its vanilla ice cream products as having all of its

7  vanilla flavor derived from the vanilla plant when this is not true.

8      Defendant's argument – that the "purpose of the CLRA's notice requirement [is] to

9  facilitate pre-complaint settlements of consumer actions wherever possible" – is undermined by

10  the CLRA letter sent by Ms. Naples is without merit. Def. Mem. at 13 citing *Von Grabe v. Sprint*

11  *PCS*, 312 F. Supp. 2d 1285, 1303- 1304 (S.D. Cal. 2003).

12      "The clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of

13  consumer actions wherever possible and to establish a limited period during which such settlement

14  may be accomplished." *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 41, 124

15  Cal.Rptr. 852 (1975). The notice in this case was sent by Ms. Naples, another class member.

16  Compl. at ¶ 131.

17      This notice is sufficient to satisfy the requirements of the CLRA. *See Sanchez v. Wal-Mart*

18  *Stores, Inc.*, 2007 WL 1345706, at *3 (E.D. Cal. May 8, 2007) ("The 2005 notice, *although it came*

19  *from another class member*, nonetheless satisfied § 1782(a) because it notified defendants of the

20  stroller's alleged defect and of a potential class action lawsuit") (emphasis added).

21      The main authorities relied upon by Defendant are inapposite and/or decided on grounds

22  not related to whether the CLRA notice must be written in the name of the named plaintiff.

23      In *Henderson,* the court ruled that a letter sent in the name of a "consumer" other than the

24  named plaintiff was insufficient because it was unclear whether that consumer was a member of

25  the proposed class. *Henderson v. The J.M. Smucker Company*, No. 2:10-cv-04524-GHK-VBK,

26  2011 WL 1050637, at *1 (C.D. Cal Mar. 17, 2011)

27      (finding notice letter inadequate where it was sent by an unspecified "consumer" without

28

1   more as to whether they were part of the same class of persons to be represented)

2   There can be no question that Plaintiff Harris and Ms. Naples are members of the same

3   proposed state-wide California class. Plaintiff Harris seeks to represent "All persons residing in

4   California who have purchased McDonald's Vanilla Soft Serve Ice Cream and other dessert items

5   which feature the Vanilla Soft Serve, i.e., Vanilla Shake, for their own use (which includes feeding

6   their families), and not for resale, since May 9, 2014." Complaint, Dkt 1, at ¶ 73.

7   Ms. Naples, in her letter, informed McDonald's that she would seek to represent virtually

8   the same class, namely, "herself and all others similarly situated in California" who "purchased

9   the Products from February 1, 2014 to the present, where such Products contained non-vanilla

10   artificial flavoring but were not adequately labeled." Exhibit A, CLRA Letter at 2-3.

11   Thus, although Plaintiff Harris relied on the letter of another class member, Ms. Naples, it

12   nonetheless satisfied the CLRA notice requirement for Plaintiff's action because that letter notified

13   McDonald's of the claims alleged in this class action lawsuit by Plaintiff Harris. Def. Mem. at 13.

14   The notice letter of Ms. Naples was properly sent to defendant's registered agent and

15   headquarters, as opposed to the McDonald's location she purchased the Product at. Complaint,

16   Dkt 1, at ¶ 131; Def. Mem. at 13 citing *Jones v. Porsche Cars North America, Inc.*, 2015 WL

17   11995257, at *4 (C.D. Cal. Oct. 15, 2015) (rejecting defendant's argument that notice letter should

18   have been sent to the dealership where plaintiff purchased the car)

19   Defendant acknowledged the letter yet disputed the "representations of the Product as

20   'Vanilla' were misleading and refused to cure the misconduct alleged." Complaint, Dkt 1, at ¶ 134.

21   By its unequivocal and identical response as reflected in its motion, Defendant has waived the

22   CLRA's notice provisions. *Outboard Marine Corp.*, 52 Cal.App.3d at 41.

23   The letter from Ms. Naples was sent more than 30 days prior to the commencement of this

24   action. Complaint, Dkt 1, at ¶ 131; Def. Mem. at 13 citing *Victor v. R.C. Bigelow, Inc.*, No. 13-

25   cv-02976-WHO, 2014 WL 1028881, at *19 (N.D. Cal. Mar. 14, 2014) (finding notice letter

26   inadequate where it was sent by plaintiff "nearly four and a half months after the Complaint was

27   filed").

28

1      Plaintiff did not attempt to ascribe notice to Defendant based on any other similar action.

2  Def. Mem. at 13 citing *Keilholtz v. Superior Fireplace Co.*, No. 08-cv-00836-CW, 2009 WL

3  839076, at *2 (N.D. Cal. Mar. 30, 2009) (finding notice was defective where plaintiff, who sought

4  a national class,  relied on defendant's "imputed" notice of a previously filed state action that

5  alleged only a California class).

6      Here, the letter from Ms. Naples was made on behalf of the identical class in Plaintiff

7  Harris' Complaint. Had Defendant sought to satisfy the demands of Ms. Naples, the claims of

8  Plaintiff Harris would have been absorbed in any class-wide resolution.

9      In short, Plaintiff's claims for relief under the CLRA and UCL cannot be dismissed, as

10  Defendant argues, because Plaintiff properly relied upon the pre-suit notice by another class

11  member to satisfy her pre-suit notice requirement. Plaintiff's claims for relief under the UCL also

12  cannot be dismissed because they do not rely solely upon a violation of the CLRA as the predicate

13  unlawfulness. McDonald's simply ignores the allegations of the Complaint that plainly state that

14  Plaintiff alleges her UCL claim on McDonald's violations of the Federal Food, Drug, and

15  Cosmetic Act, violations of the California False Advertising Law, and violations of the California

16  Sherman Food, Drug, and Cosmetic Law. Complaint at ¶¶87-103.

17  **III.   PLAINTIFF IS ENTITLED TO EQUITABLE RELIEF**

18      Defendant argues, "[A] plaintiff cannot seek equitable relief under [the UCL and FAL]

19  without first establishing that she lacks an adequate remedy at law. Def. Mem. at 14, citing *Sonner*

20  *v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This interpretation of Ninth Circuit

21  law misreads *Sonner* and cases decided since.

22      Contrary to Defendant's assertion, the equitable remedy of an injunction is appropriate

23  where Plaintiff is suffering continual injury. *Spirtos v. Allstate Inc., Co.*, 2003 WL 25900368 at *4

24  (C.D. Cal. Jan. 10, 2003). Here, Plaintiff and other California consumers are continuing to suffer

25  from injuries based on Defendant's representation of "vanilla" without qualification because

26  Plaintiff or other California consumers cannot ascertain whether the Product contains added

27  vanillin not from vanilla beans. A legal remedy is not adequate in these circumstances and it is

28

appropriate therefore to permit Plaintiff to assert the equitable remedy of an injunction. *See Deras v. Volkswagen Group of America, Inc.*, 2018 WL 2267448 at *6 (N.D. Cal. May 17, 2018) (court finding "no bar to pursuit of alternative remedies at the pleadings stage" where plaintiffs argued legal remedy was inadequate) (citing *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085 at *9 (N.D. Cal. Mar. 26, 2018) (internal quotations omitted).

Defendant's citation to *Sonner* is inapposite because *Sonner* only dealt with "past harm" under the UCL, and not future harm. *See Sonner*, 2020 WL 4882896 at *7. Notably, "[i]njunctive relief [was] not at issue" in *Sonner*. *Id*. at *6. Plaintiff's claims for injunctive relief are not precluded by the ruling in *Sonner*. Plaintiff does not have an adequate remedy at law here because an injunction is necessary to stop Defendant's wrongful conduct. Defendant continues to mislabel its Products. *See Gross v. Vilore Foods Co.*, No. 3:20-cv-00894-DMS-JLB, 2020 WL 6319131 at *3 (S.D. Cal. Oct. 28, 2020) (Court agrees that *Sonner* is distinguishable "because it involved only a request for restitution, not a request for injunctive relief.").

## IV.   PLAINTIFF HAS STANDING TO BRING CLAIMS FOR MONETARY AND INJUNCTIVE RELIEF

### A.   Plaintiff Has Plausibly Alleged an Economic Injury

Defendant claims Plaintiff does not have statutory standing to bring her claims because Plaintiff has not established that she has suffered an economic injury. Def. Mem. 11. The Complaint could not be clearer on how Plaintiff suffered injury: "Plaintiff paid more for the Product than she would have had she not been misled by the false and misleading labeling and advertising complained of herein." Compl. at ¶ 67. That is enough to allege economic injury under Ninth Circuit law.

*Zaragoza v. Apple Inc.*, No. 18-cv-06139-PJH, 2019 WL 1171161 (N.D. Cal. March 13, 2019), is on point. In that case, the court rejected the defendant's argument, identical to Defendant's here, that "plaintiffs' allegations that they paid more for the product due to the misrepresentation, or that they would have not bought the product absent it, are implausible." *Id.*, at *9. The court explained:

'For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.' *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011); *Chavez v.* Blue *Sky Nat. Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) (under the UCL, FAL, and CLRA injury pled when plaintiff alleged "he did not receive what he had paid for" and "he would not have paid had he known the truth"). '[T]he economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action.' *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018); . . . *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. This is a quintessential injury-in-fact.") (citation omitted).

*Id.*

Thus, under well-established Ninth Circuit precedent such as *Chavez*, *Davidson*, and *Maya*, Plaintiff sufficiently asserted a quintessential injury-in-fact by alleging that she spent money that she would not have spent, absent Defendants' wrongful actions. Plaintiff has established standing to bring her claims for monetary relief.

### B.   Plaintiff has Standing for Injunctive Relief

Defendant argues against injunctive relief, stating "Ordinarily, a consumer who has discovered an allegedly deceptive practice will not be deceived again, making an injunction unnecessary to stave off 'certainly impending' future harm." Def. Mem. at 17.

The fundamental flaw in this argument is that Plaintiff alleges Defendant's labeling fails to disclose the artificial vanilla flavoring, which was detected with laboratory testing. Complaint, Dkt 1, at ¶¶ 41-60.   Thus, Plaintiff or other California consumers cannot simply look at the ingredients on the menu board, kiosk, website or pamphlet, in order to determine whether the Product's formulation was changed to remove the artificial vanilla flavoring to comport with the representation of the ice cream as "Vanilla."

Yet, Plaintiff clearly alleged that she "would purchase [McDonald's Vanilla Soft Serve Ice Cream] again in the future if the product were remedied to reflect Defendant's labeling and marketing claims for it." *Id.* at ¶ 16. As a result, Defendant's mechanically cited cases are wholly

1   inapposite. Def. Mem. at 16-18. Instead, Plaintiff's allegations fall squarely within the holding of

2   *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). In *Davidson,* the Ninth Circuit

3   held as follows:

> 4   We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now
> 5   knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or
> 6   hypothetical" threat of future harm. Knowledge that the advertisement or label was
> 7   false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations
> 8   that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.
> 9

10   889 F.3d at 969–70 (footnote and citation omitted). Just as in *Davidson*, Plaintiff alleges she would

11   like to purchase the product in the future, but she cannot discover prior to repurchase whether

12   McDonald's previous misrepresentations have been cured. Plaintiff easily meets the standing

13   requirement for injunctive relief. *See also Tucker v. Post Consumer Brands, LLC*, No. 19-cv-

14   03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. April 21, 2020) ("Plaintiff's inability to rely on

15   the honey-related words and images prominently featured on the front and top of the cereal box

16   constitutes an ongoing injury for which plaintiff may seek injunctive relief. As such, defendant's

17   request to dismiss plaintiff's request for injunctive relief is denied.").

18

19                     **CONCLUSION**

20       For the reasons stated above, Defendants' motion must be denied in its entirety.

21                        Respectfully submitted,

22   Date: January 19, 2021

23                        **Borison Firm, LLC.**

24                    By: /s/ Scott C. Borison

25

26

27

28

Scott C. Borison (State Bar No. 289456)
scott@borisonfirm.com
1900 S. Norfolk St Ste 350
San Mateo CA 94403
Telephone: (301) 620-1016
Facsimile: (301) 620-1018

**Sheehan & Associates, P.C.**
Spencer Sheehan (admitted *pro hac vice*)
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com


*Counsel for Plaintiff and the Proposed Class*