1

**FAEGRE DRINKER BIDDLE & REATH LLP**
Rita Mansuryan (CA Bar No. 323034)
2
*rita.mansuryan@faegredrinker.com*
1800 Century Park East, Suite 1500
3
Los Angeles, California 90067
Telephone: (310) 203-4000
4
Facsimile: (310) 229 1285

5
Sarah L. Brew (*pro hac vice*)
*sarah.brew@faegredrinker.com*
6
Tyler A. Young (*pro hac vice*)
*tyler.young @faegredrinker.com*
7
Rory F. Collins (*pro hac vice*)
*rory.collins@faegredrinker.com*
8
2200 Wells Fargo Center
90 South Seventh Street
9
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
10

*Counsel for Defendant*
11
*McDonald's Corporation*

12

13
## UNITED STATES DISTRICT COURT

14
## NORTHERN DISTRICT OF CALIFORNIA

15

16
Eugina Harris, individually, and on behalf of all those similarly situated,

17
          Plaintiff,

18
    v.

19
McDonald's Corporation,

20
          Defendant.

21

22

Case No. 3:20-cv-06533-RS

Assigned to Judge Richard Seeborg

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Hearing Date: February 18, 2021
Time: 1:30 p.m.
Courtroom: 3, 17th Floor

Complaint Filed: September 17, 2020

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

  I.    Plaintiff Failed to State an Actionable Claim Under the UCL, FAL, or CLRA. ................. 2

       A.    Plaintiff Has Not Plausibly Alleged that Reasonable Consumers Are Deceived. ...... 2

            1.    Plaintiff's "artificial" allegations change nothing .............................................. 3

            2.    Plaintiff cannot distinguish the numerous cases in which courts have
                 dismissed similar "vanilla" claims as implausible .............................................. 4

            3.    Plaintiff's other arguments are equally baseless ............................................... 6

       B.    The FDA Flavor Labeling Regulations Do Not Apply to the Product. .................... 7

  II.    Plaintiff's Conclusory Allegation of Economic Injury Is Insufficient. ............................... 8

  III.  Plaintiff's CLRA Claim for Damages Must Be Dismissed Because She Failed to
      Provide Pre-Suit Notice.................................................................................................. 10

  IV.  Plaintiff's Claims for Equitable Relief Must Be Dismissed. ........................................... 12

  V.    Plaintiff Lacks Standing to Seek Injunctive Relief. ......................................................... 14

CONCLUSION ................................................................................................................ 15

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

i

DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Aberin v. Am. Honda Motor Co.*,
   2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ......................................................... 13

5

*Asghari v. Volkswagen Grp. Of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..................................................................... 11

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 9

7

8

*Barreto v. Westbrae Nat., Inc.*,
   2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) ............................................................. 4, 5

9

10

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) .................................................................................... 7

11

12

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................................... 12

13

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009) ........................................................................... 10

14

15

*Clark v. Westbrae Natural, Inc.*,
   2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ........................................................ 4, 5

16

17

*Cosgrove v. Blue Diamond Growers*,
   2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ........................................................ 4, 5

18

19

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................................................. 10

20

21

*Day v. LSI Corp.*,
   705 F. App'x 539 (9th Cir. 2017) ........................................................................... 12

22

23

*Deras v. Volkswagen Group of America, Inc.*,
   2018 WL 2267448 (N.D. Cal. May 17, 2018) ........................................................ 13

24

25

*Dumont v. Reily Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ...................................................................................... 7

26

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .................................................................................... 2

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

ii
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

*Ehrlich v. BMW of N. Am., LLC,*
  801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................ 3

*Gross v. Vilore Foods Co.,*
  2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ..................................................... 13

*Henderson v. J.M. Smucker Co.,*
  2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ............................................. 11, 12

*In re MacBook Keyboard Litig.,*
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................................... 13

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,*
  2020 WL 1829045 (N.D. Cal. April. 10, 2020) .................................................. 11

*Joslin v. Clif Bar & Co.,*
  2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ................................................... 15

*Keilholtz v. Superior Fireplace Co.,*
  2009 WL 839076 (N.D. Cal. Mar. 30, 2009) ............................................... 11, 12

*Mantikas v. Kellogg Co.,*
  910 F.3d 633 (2d Cir. 2018) ................................................................................. 7

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011) ............................................................................ 10

*McCellen v. Fitbit, Inc.,*
  2018 WL 2688781 (N.D. Cal. June 5, 2018) ..................................................... 11

*Pichardo v. Only What You Need, Inc.,*
  2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................................... 3, 4, 5, 7

*Saidian v. Krispy Kreme Doughnut Corp.,*
  2017 WL 945083 (C.D. Cal. Feb. 27, 2017) ....................................................... 8

*Sanchez v. Wal-Mart Stores, Inc.,*
  2007 WL 1345706 (E.D. Cal. May 8, 2007) ...................................................... 11

*Sharpe v. A&W Concentrate Company,*
  ___ F. Supp. 3d __, 2020 WL 4931045 (E.D.N.Y. Aug, 24, 2020) ...................... 5

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ........................................................................ 12, 13

*Spirtos v. Allstate Inc.,*
  2003 WL 25900368 (C.D. Cal. Jan. 10, 2003) .................................................. 13

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

iii
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

*Steele v. Wegmans Food Markets, Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) ............................................................ 4, 5

*Victor v. R.C. Bigelow, Inc.*,
    2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ............................................... 12

*Vizcarra v. Unilever United States, Inc.*,
    2020 WL 4016810 (N. D. Cal. July 16, 2020) ................................................. 6

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) .......................................................................... 7

*Workman v. Plum Inc.*,
    141 F. Supp. 3d 1032 (N.D. Cal. 2015)........................................................... 7

*Wynn v. Topco Associates, LLC*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ........................................... 1, 4, 5

*Yothers v. JFC Int'l, Inc.*,
    2020 WL 5015262 (N.D. Cal. May 14, 2020).............................................. 14

*Zaback v. Kellogg Sales Co.*,
    2020 WL 6381987 (S.D. Cal. Oct. 29, 2020)................................................ 13

*Zaragoza v. Apple Inc.*,
    2019 WL 1171161 (N.D. Cal. Mar. 13, 2019) .......................................... 9, 10

**STATE CASES**

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................................... 2

*Outboard Marine Corp. v. Super. Ct.*,
    52 Cal. App. 3d 30 (1975) ............................................................................ 11

**REGULATIONS**

21 C.F.R. § 101.9 .................................................................................................. 8

21 C.F.R. § 101.11 ................................................................................................ 8

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

iv
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1

**INTRODUCTION**

2          Plaintiff's Opposition to McDonald's motion to dismiss does not rebut any of the reasons

3    why the Complaint should be dismissed. Plaintiff's central argument in opposition is that

4    McDonald's soft serve "Vanilla Cone" (the "Product") should have "artificial" in its name. This

5    argument is categorically wrong. Plaintiff's "artificial" theory is not based on any specific

6    allegation that the Product contains an artificial ingredient, but on Plaintiff's counsel's mistaken

7    belief that an "artificial" statement is required by FDA flavor labeling regulations. But as

8    McDonald's showed in its opening brief, those regulations do not apply to this Product because

9    it is sold in quick-service restaurants, and the Product *does not contain any artificial flavors*.

10         What ultimately matters for Plaintiff's claims is not what any regulations say, but

11   whether a ***reasonable consumer*** would be deceived. Plaintiff offers nothing in her Opposition to

12   suggest that a reasonable consumer would see "Vanilla Cone" on a McDonald's menu board and

13   draw the conclusion that the soft serve's vanilla flavor is derived exclusively from the vanilla

14   plant. Nor does Plaintiff's Opposition offer any meaningful response to the growing body of

15   cases in which courts have ruled that "vanilla" cases brought by Plaintiff's counsel fail as a

16   matter of law because no reasonable consumer would share the plaintiffs' reading of the term

17   "vanilla." Just last week, a fifth judge in the Southern District of New York dismissed

18   substantially similar claims brought by Plaintiff's counsel against a vanilla-flavored almond milk

19   product. *Wynn v. Topco Associates, LLC*, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021).

20         The reasoning of *Wynn*—as well as the five previous decisions dismissing similar

21   cases—applies with even greater force here, where the Product does not even have a label—it's

22   simply and accurately described on McDonald's menu boards as a "vanilla cone." When

23   consumers order it, they expect to get a soft serve cone that tastes like vanilla. Plaintiff concedes

24   that is exactly what they get, and her Complaint should be dismissed, in its entirety and with

25   prejudice.

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

1
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1

**ARGUMENT**

2

**I.      Plaintiff Failed to State an Actionable Claim under the UCL, FAL, or CLRA.**

3            Plaintiff does not dispute that, to state a claim under the UCL, FAL, or CLRA, she must

4    plausibly allege not just that she was deceived, but "a probability 'that a significant portion of

5    the general consuming public or of targeted consumers, acting reasonably in the circumstances,

6    could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v.*

7    *Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003)). Nor does she dispute that dismissal is

8    proper when the alleged deception is based on an unreasonable or implausible interpretation of a

9    product's name or description. (*Compare* Mem. at 7 *with* Opp. at 4.) That is precisely the

10   situation here. Plaintiff's theory fails because, as explained in McDonald's opening brief and a

11   series of decisions in similar cases, reasonable consumers understand that "Vanilla" in this

12   context is a flavor designator, not a representation that the Product's flavor comes exclusively

13   from the vanilla plant.

14          **A.      Plaintiff Has Not Plausibly Alleged that Reasonable Consumers Are**

15                   **Deceived.**

16          Plaintiff's theory boils down to this: "The Product's representation of 'Vanilla' leads

17   consumers to believe that it is flavored only with vanilla." (Compl. ¶ 6; *see also* Opp. at 1

18   ("Plaintiff alleges that a reasonable consumer would understand 'Vanilla' without qualification to

19   represent that an ice cream cone is made with real vanilla.").) McDonald's demonstrated in its

20   opening brief that no *reasonable* consumer would make that leap. (Mem. at 7-10.) Rather, a

21   *reasonable* consumer buying a soft serve cone at McDonald's would recognize that vanilla can be

22   a flavor or an ingredient and would know from experience that menu boards commonly list ice

23   cream and soft serve *flavors*. Here, Plaintiff admits that the Product tastes like vanilla and

24   contains vanilla. (Compl. ¶ 59; *see also* Opp. at 11 ("Plaintiff knows she did not buy a 'bowl of

25   vanilla,' but expects that there is vanilla in the product and the representation of the flavor would

26   be truthful and not misleading.").) Thus, there is and can be no deception. None of Plaintiff's

27   arguments overcomes this common-sense analysis.

28

1

### 1.    Plaintiff's "artificial" allegations change nothing.

Plaintiff's main argument in opposition is that calling the Product a "Vanilla Cone" is misleading because "the vanilla soft serve ice cream is flavored by an artificial vanilla in the form of vanillin yet omits 'Artificial' from the product name." (Opp. at 6.) In other words, Plaintiff appears to be making the extreme argument that the law requires McDonald's to call the Product "Artificial Vanilla Cone" on its menu boards. This argument fails.

Plaintiff's Complaint does not allege that McDonald's represented the Product to consumers as "natural." Plaintiff concedes as much. (*See* Opp. at 6.) Instead, Plaintiff argues that her theory "is one of omission, whereby Defendant had the affirmative obligation to disclose the flavor source of the vanilla." (Opp. at 6-7 (citing *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010)).) This is incorrect. For one thing, McDonald's never represented that the Product was flavored *only* with vanilla beans or extract, so the alleged presence of added vanillin is not contrary to any representation. And as a matter of law, only material omissions are actionable, *see Ehrlich*, 801 F. Supp. 2d at 916, and the difference between vanillin from vanilla and vanillin from other natural sources is not material to a reasonable consumer. *Pichardo*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020). In short, no *reasonable* consumer would see the words "Vanilla Cone" and conclude that the Product contains no artificial ingredients or that the only source of vanilla flavor is vanilla extract.[1] *See, e.g., id.* at *5 (finding that "reasonable consumers associate the word 'vanilla' with a flavor, not with an ingredient" and the term "vanilla" by itself does not "imply that there are no other flavoring ingredients"). Instead, consumers expect to get a soft serve cone that tastes like vanilla, and Plaintiff concedes that is exactly what they get. (Compl. ¶ 59.)

In addition, McDonald's demonstrated in its opening brief that Plaintiff failed to include any plausible allegations that the Product contains artificial ingredients. (Mem. at 9-10.) Notably, the Complaint does not include any allegation that the Product contains flavor ingredients that are artificial. Rather, Plaintiff's artificial arguments are based entirely on *Plaintiff's counsel's*

---

[1] As a matter of fact, the Product *does not* contain any artificial flavors. But even assuming for the sake of argument that it did, Plaintiff would not state a plausible claim that a reasonable consumer would be deceived by the description of the Product as a "Vanilla Cone."

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

3
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

interpretation of, and trade articles regarding, FDA regulations that *do not apply* to this Product. (*See infra* at 7-8 for further explanation of the inapplicability of the FDA regulations; *see also* Mem. at 9-10.) Plaintiff offers ***no response*** to this point. Thus, Plaintiff's Complaint fails to *plausibly* allege that the Product contains artificial flavors. *See, e.g.*, *Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331, at *3 (S.D.N.Y. Jan. 7, 2021) ("Barreto does not plausibly allege that the added vanillin detected by the GS-MS analysis was derived from artificial rather than natural sources.").[2]

### 2. Plaintiff cannot distinguish the numerous cases in which courts have dismissed similar "vanilla" claims as implausible.

McDonald's cited four recent cases in which courts have dismissed similar "vanilla" cases brought by Plaintiff's counsel. *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020); *Pichardo*, 2020 WL 6323775, at *5; *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020); *Clark v. Westbrae Natural, Inc.*, 2020 WL 7043879, at *3-4 (N.D. Cal. Dec. 1, 2020). In the short time since McDonald's filed its opening brief, two decisions have joined this growing list. *Barreto*, 2021 WL 76331, at *3; *Wynn*, 2021 WL 168541, at *3.

Plaintiff suggests that the Court should disregard these on-point cases for two utterly unpersuasive reasons. First, Plaintiff says that the Court should not engage in "herding behavior" or follow the "wisdom of crowds" for "the sake of consensus alone." (Opp. at 13-15.) This is a strange way to refer to the Court's consideration of the persuasive value of six carefully reasoned decisions by different federal judges. McDonald's does not suggest that the Court should rely on "court-counting precedent," as Plaintiff suggests (*id.*), but instead should follow the unassailable logic that led these six federal judges to conclude that reasonable consumers would not be deceived by the "vanilla" statements at issue.

---

[2] The purported results of Plaintiff's gas chromatography-mass spectrometry ("GC-MS") analysis do not specify whether the substances detected were derived from natural sources or artificial sources. (*See* Compl. at 9.) Regardless, Plaintiff's GC-MS analysis suffers from several flaws, which McDonald's identified in its opening brief (Mem. at 9) and Plaintiff did not dispute in her Opposition.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

4

DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1       Second, Plaintiff claims that these prior vanilla decisions are off point because those cases

2 did not involve an allegation that the "products contained artificial flavors." (Opp. at 13.) This

3 argument is wrong for several reasons. As an initial matter, several of these prior cases *did*

4 *involve* allegations that the products contained artificial flavors, as the opinions explicitly note.

5 *Steele*, 2020 WL 3975431, at *1 ("Plaintiffs' claim that Wegmans' ice cream is flavored by

6 artificial flavors, not natural vanilla flavor, has no factual support."); *Cosgrove* 2020 WL

7 7211218, at * 1 ("Plaintiffs contend this labeling is misleading because 'it has less vanilla than

8 the label represents, contains non-vanilla flavors which provide its vanilla taste and contains

9 artificial flavors, not disclosed to consumers on the front label as required by law and consumer

10 expectations.'"); *Wynn*, 2021 WL 168541, at *5 (similar); *Barreto*, 2021 WL 76331, at *3-4

11 (similar); *Clark*, 2020 WL 7043879, at *1 (withdrawing allegations about artificial flavors in the

12 amended complaint). Still, these courts concluded that no reasonable consumer would be

13 deceived by the "vanilla" statements at issue.

14       Even putting that aside, Plaintiff's implausible "artificial" allegations are simply a

15 different spin on the same basic claim, and that claim fails for the same reasons it did in these

16 previous cases.[3] As Judge Corley explained in *Clark*, "[t]he word 'vanilla' itself does not suggest

17 to the reasonable consumer that the flavor comes exclusively from the vanilla bean." 2020 WL

18 7043879, at *3. Nor would the word vanilla—standing alone—suggest that the Product contains

19 only natural ingredients. *See id.*

20       Plaintiff's counsel also cites a "vanilla" case that survived a motion to dismiss and implies

21 that it did so because the complaint in that case included an "artificial" allegation. (Opp. at 13

22 (citing *Sharpe v. A&W Concentrate Company*, ___F. Supp. 3d __, 2020 WL 4931045 (E.D.N.Y.

23 Aug, 24, 2020)).) But in fact, what distinguished the *Sharpe* case is that the product at issue

24 there—vanilla flavored root beer—claimed to be "MADE WITH AGED VANILLA." 2020 WL

25 4931045, at *1. In dismissing other vanilla cases, courts have distinguished *Sharpe* because the

26
27
28

[3] The same regulations-based argument that Plaintiff makes here would apply to those prior cases, as the plaintiffs alleged in each one that the product contained added vanillin from non-vanilla sources. Again, the difference is that the products in those cases—unlike the Vanilla Cone at issue here—actually were subject to the FDA flavor regulations from which Plaintiff's "artificial" argument springs.

1  products at issue—like the Product here—do not include a specific claim or description about the

2  type of vanilla in the product. *See, e.g.*, *Pichardo*, 2020 WL 6323775, at *5 ("Had Defendant's

3  label contained other qualifying words, such as 'made with,' 'contains,' or 'vanilla beans,' a

4  reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or

5  primary flavor ingredient, but that is not the case here."). So too in this case.[4]

6      Thus, even if Plaintiff had plausibly pleaded that the Product contains artificial

7  ingredients, which she has not, she would still fail to state an actionable claim under the

8  reasonable-consumer standard.

9              **3.      Plaintiff's other arguments are equally baseless.**

10     Because she cannot offer any meaningful response to the growing body of case law

11 dismissing substantially identical "vanilla" cases, Plaintiff makes a series of incorrect arguments

12 based on inapposite case law.

13     Throughout her brief, Plaintiff makes arguments and statements about the Product's

14 "labeling." (*See, e.g.*, Opp. at 1, 6-7, 10-11, 21.) As McDonald's explained in its opening brief

15 (Mem. at 5-6), the Product does not have a "label." Rather, the Product appears on menu boards

16 and kiosks and is sometimes described as a "Vanilla Cone" or sometimes merely as a "Cone." (*Id.*

17 at 2-3.) Thus, contrary to Plaintiff's constant mischaracterization, there are no label statements.

18     Next, Plaintiff objects to comparing "Vanilla" to ice cream flavor names such as "Rocky

19 Road" because vanilla is a "real ingredient." (Opp. 10.) Plaintiff misses the point. The purpose of

20 the comparison is to show that ice cream (and soft serve) is described by its flavor, not by its

21 ingredients. Whether the menu board says "Vanilla," "Pistachio," "Rocky Road," or "Moose

22 Tracks," reasonable consumers understand from the context that those are all flavors. If they want

23

24

25

26  ---
[4] Plaintiff cites in passing *Vizcarra v. Unilever United States, Inc.*, 2020 WL 4016810, at *1 (N.

27 D. Cal. July 16, 2020), which is yet another "vanilla" case brought by Plaintiff's counsel. (Opp.
8.) The decision in *Vizcarra* was based only on procedural and standing issues; there was no

28 analysis of whether the plaintiff had plausibly alleged that a reasonable consumer would be
deceived.

1    to know the ingredients in any of them, reasonable consumers also understand that they can ask at

2    the point of sale or, in the case of McDonald's, look on the website.[5]

3        That vanilla can be a flavor is yet another way in which the cases on which Plaintiff

4    relies, which involved express ingredient claims, are distinguishable. (*See* Opp. at 5.) For

5    example, in *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008), the product's

6    front label included images of a variety of fruits and the statement "with fruit juice and other all

7    natural ingredients." Both those representations spoke to the product's ingredients, and both

8    were false—the product did not contain *any* of the fruits depicted on the label and not all the

9    ingredients were natural. *Id. See also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th

10   Cir. 2020) (product was labeled "100% Grated Parmesan Cheese" but contained between 4% and

11   9% non-cheese additives); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (crackers

12   were labeled "MADE WITH WHOLE GRAIN" but were predominantly white flour); *Dumont v.*

13   *Reily Foods Co.*, 934 F.3d 35, 42 (1st Cir. 2019) (coffee labeled "Hazelnut Crème" had "no

14   hazelnut at all").

15       Here, in contrast, a reasonable consumer would understand based on context that

16   "Vanilla" refers to the Product's flavor, as explained above. Moreover, the McDonald's menu

17   board does not include any additional words (such as "made with") or images (such as vanilla

18   beans) associated with vanilla as an ingredient. *See Pichardo*, 2020 WL 6323775, at *3. Even if

19   "Vanilla" were interpreted as an ingredient claim, it is still true—the Product contains vanilla.

20   *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036-37 (N.D. Cal. 2015) (distinguishing

21   *Williams* because it concerned affirmative misrepresentations).

22       **B.    The FDA Flavor Labeling Regulations Do Not Apply to the Product.**

23       McDonald's explained in its opening brief that the FDA flavor labeling regulations cited

24   in the Complaint apply to *packaged* food products and do not apply to food sold in quick-service

25   restaurants for immediate consumption. (Mem. at 5-6.) Plaintiff argues that McDonald's is

26   incorrect because, according to her reading of the regulations, the express exemption for quick-

27

28

---

[5] The point of asking about the ingredients is not to clear up any ambiguity or deception on the menu board. Rather, it is a recognition that ice cream names listed on a menu board are distinct from the ingredient information.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

7

DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1   service restaurants applies only to "nutrition information." (Opp. at 15.) Plaintiff does not cite

2   any authority that supports this proposition, which is unsurprising because she gets the rules

3   exactly backward. In fact, the only FDA "labeling" regulations that apply to restaurants are the

4   menu-labeling regulations, which require calories to be posted and nutrition information to be

5   available upon request. *See* 21 C.F.R. § 101.9(j); 21 C.F.R. § 101.11. (*See also* Mem. at 5-6.)

6       Plaintiff cites only one case to support her argument, but that case actually confirms that

7   the FDA flavor-labeling regulations do *not* apply here. In *Saidian v. Krispy Kreme Doughnut*

8   *Corp.*, 2017 WL 945083, at *1 (C.D. Cal. Feb. 27, 2017), the plaintiffs alleged that Krispy

9   Kreme donut names incorporating the terms "Raspberry," "Maple," or "Blueberry" were

10  misleading because they did not contain those ingredients. Krispy Kreme argued that the claims

11  were preempted by the menu-labeling regulations, which do not require disclosure of ingredients

12  at the point of sale. *Id.* at *2. The court rejected this argument because the plaintiffs' claims did

13  not seek to impose any requirements inconsistent with the ***menu-labeling regulations***, and

14  Krispy Kreme had not identified any other regulation "that governs the use of the terms

15  'Raspberry,' 'Maple,' or 'Blueberry'" in its product names. *Id.* at *2 n.1.

16      In short, the FDA flavor-labeling regulations do not apply to the Product and are

17  irrelevant to this case. Accordingly, Plaintiff's UCL "unlawful" claim (Count I) must be

18  dismissed to the extent it is based on an alleged violation of these regulations. Likewise,

19  Plaintiff's arguments about how the Product must be "labeled," the "purpose of the label

20  requirements," and the opinions of "flavor industry representatives" on what consumers expect

21  based on FDA-regulated labels are irrelevant and should be given no weight. (Opp. 8-10.)

22  **II.    Plaintiff's Conclusory Allegation of Economic Injury Is Insufficient.**

23      McDonald's established in its opening brief that to have statutory standing under the

24  UCL, FAL, or CLRA, a plaintiff must establish an "economic injury" caused by the business

25  practice or advertising at issue. (Mem. at 11.) Plaintiff does not dispute this point. (*Compare*

26

27

28

1   Mem. at 11 *with* Opp. at 21-22.) It is therefore undisputed that each of Plaintiff's claims is

2   subject to dismissal if she failed to establish the required "economic injury."

3        In her Opposition, Plaintiff asserts that she satisfied the economic-injury requirement by

4   alleging that "Plaintiff paid more for the Product than she would have had she not been misled."

5   (Opp. 21.) Plaintiff is wrong. As the Supreme Court explained, "[a] pleading that offers 'labels

6   and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor

7   does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

8   enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555,

9   557). Plaintiff's allegation of economic injury is just that: a naked assertion. She provides no

10  factual allegations that plausibly support her assertion and it is entitled to no weight.

11        In fact, courts have rejected precisely the type of economic-injury allegation plaintiff

12  advances here. In *Babaian v. Dunkin' Brands Grp. Inc.*, the court held that plaintiff's "*subjective*

13  *willingness* to pay is not a functional indicator of the objective market effects of the purported

14  misrepresentation." 2018 U.S. Dist. LEXIS 98673, at *17 (C.D. Cal. June 12, 2018). That is all

15  Plaintiff offers here and it is insufficient. McDonald's cited *Babaian* for this proposition in its

16  opening brief, but Plaintiff offered no response to it.[6] (*Compare* Mem. at 11-12 *with* Opp. at 21-

17  22.)

18        Instead, Plaintiff relies on a series of inapposite cases that do not apply to her facts. (Opp.

19  at 21-22.) Specifically, in each of the cases Plaintiff cites, the complaint included additional

20  factual allegations that bolstered the plausibility of the alleged economic injury. For example, in

21  *Zaragoza v. Apple Inc.*, 2019 WL 1171161, at *1 (N.D. Cal. Mar. 13, 2019), the plaintiffs

22  alleged that they would not have purchased an entire season of TV shows on Apple's iTunes

23  store had they known that Apple, in representing the number of "episodes" in a season, counted

24  promotional videos in addition to plot-based episodes. *Id.* at *2-3. The complaint further alleged

25  that one plaintiff had purchased a season of "Genius: Edison" that Apple advertised as including

26

27

28

---

[6] Plaintiff likewise fails to respond to McDonald's observation that it is simply implausible to suggest that a Product being sold for $1.69 reflects a price premium that consumers were willing to pay because they wanted a soft serve cone flavored exclusively with expensive vanilla bean ingredients. (*See* Mem. at 10.)

1    "13 Episodes," but that actually included only six plot-based episodes and seven promotional

2    videos; and included pricing information showing that a single episode was available for $2.99

3    and a full season for $14.99. *Id.* at *1. The Plaintiffs in that case thus provided a factual basis for

4    their allegation that "plaintiffs received fewer episodes than they believed they were purchasing,

5    and they received a smaller discount by buying the entire season than they believed they were

6    getting compared to buying individual episodes." *Id.*

7            Detailed factual allegations supporting the alleged economic injury also distinguish the

8    Ninth Circuit cases on which Plaintiff relies. *See Chavez v. Blue Sky Nat. Beverage Co.*, 340 F.

9    App'x 359, 361–62 (9th Cir. 2009) (plaintiff adequately alleged injury based on soda label

10   referencing New Mexico, where plaintiff alleged that he was born and raised in New Mexico,

11   wanted to support a New Mexico company, and wanted to associate himself with New Mexico);

12   *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018) (price premium allegation

13   adequate where plaintiff alleged that, while shopping, she "came across Scott Wipes . . . saw the

14   word 'flushable' on the Scott Wipes package and noticed that the Scott Wipes were more

15   expensive than wipes that did not have the word 'flushable' on the package"); *Maya v. Centex*

16   *Corp.*, 658 F.3d 1060, 1065 (9th Cir. 2011) (plaintiffs adequately alleged that their home prices

17   were inflated relative to other neighborhoods where they alleged that developer financed at least

18   65% of the transactions in their neighborhood and marketed to high-risk buyers).

19           Plaintiff offers no such factual support for her alleged economic injury. She does not

20   identify the amount of the alleged "price premium," nor does she identify any similar products

21   that sold without such a premium. Thus, Plaintiff has failed to allege an "economic injury" and

22   her UCL, FAL, and CLRA claims must be dismissed for lack of statutory standing.

23   **III.    Plaintiff's CLRA Claim for Damages Must Be Dismissed Because She Failed to
             Provide Pre-Suit Notice.**

24           McDonald's demonstrated, and Plaintiff does not dispute, that Plaintiff did not send

25   McDonald's the pre-suit notice required by the CLRA. (*Compare* Mem. at 13 *with* Opp. at 16.)

26   Instead, Plaintiff claims that she can rely on a pre-suit notice letter sent by an unrelated

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

10
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1  consumer, Tiana Naples, to McDonald's. (Opp. at 16-19.) Plaintiff is wrong on the law and thus

2  her CRLA claim must be dismissed with prejudice.[7]

3      Although a *named plaintiff's* pre-suit notice may provide sufficient notice of potential

4  class claims under the CLRA, a named plaintiff cannot rely on a pre-suit notice sent by an absent

5  class member—or even another named plaintiff who is not pursuing a CLRA claim. This is

6  illustrated by one of the cases on which Plaintiff relies. (*See* Opp. at 16 (citing *Asghari v.*

7  *Volkswagen Grp. Of Am., Inc.*, 42 F. Supp. 3d 1306, 1317-18 (C.D. Cal. 2013)).) In *Asghari*,

8  named-plaintiff Asghari sent pre-suit notice on behalf of a putative class, which the court noted

9  was "sufficient notice of potential class claims for purposes of § 1782." 42 F. Supp. 3d at 1318.

10  After Asghari withdrew his CLRA claim, however, the court held that the other named plaintiffs

11  and class members could no longer rely on Asghari's CLRA letter and, therefore, dismissed their

12  CLRA claims. *Id.*

13      The only case Plaintiff cites where a named plaintiff was allowed to rely on pre-suit

14  notice sent by an absent putative class member is *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL

15  1345706, at *3 (E.D. Cal. May 8, 2007).[8] (Opp. at 17.) *Sanchez*, however, ignores both the text

16  of Section 1782, which indicates that the "consumer" who gives notice is also the party who

17  "commenc[es]" the action, *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *1 (C.D. Cal.

18  Mar. 17, 2011), and the purpose of the pre-suit notice requirement, which is to "facilitate *pre-*

19  _____

20  [7] Plaintiff asserts that McDonald's also asks for her UCL claim to be dismissed for failure to
   provide pre-suit notice. (Opp. at 16, 20.) McDonald's did not make that argument. Instead,

21  McDonald's argued that Plaintiff's UCL claim fails because (1) she has not plausibly alleged that
   a reasonable consumer would be deceived, (2) the FDA flavor labeling regulations do not apply

22  and therefore cannot serve as a predicate for a UCL "unlawful" claim, (3) Plaintiff lacks statutory
   standing to assert a UCL claim, and (4) the UCL claim sounds in equity and Plaintiff has an

23  adequate remedy at law. (*See* Mem. at 5-11, 14-16.) Each of those arguments applies *regardless*
   of whether Plaintiff properly provided notice of her CLRA claim for damages. (*See* Mem. at 16

24  (explaining that adequate-remedy-at-law argument does not depend on whether Plaintiff properly
   availed herself of a CLRA damages claim).)

25  [8] The other cases on which Plaintiff relies are inapposite because the plaintiffs in those cases gave
   pre-suit notice and did not need to rely on notice sent by an absent putative class member. *See In*

26  *re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
   2020 WL 1829045 at *6 (N.D. Cal. April. 10, 2020) (concluding that the plaintiffs' notices were

27  timely sent and, thus, it was not necessary to decide whether the plaintiffs could rely on earlier
   notices sent by other consumers); *McCellen v. Fitbit, Inc.*, 2018 WL 2688781, at *3 (N.D. Cal.

28  June 5, 2018) (noting that one of the named plaintiffs sent pre-suit notice on behalf of herself and
   the putative class).

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

11
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1    *complaint* settlements of consumer actions *wherever possible*," *Outboard Marine Corp. v. Super.*

2    *Ct.*, 52 Cal. App. 3d 30, 41 (1975) (emphasis added). A pre-complaint resolution is not possible

3    where the plaintiff filing the lawsuit does not provide notice to the defendant. *See Keilholtz v.*

4    *Superior Fireplace Co.*, 2009 WL 839076, at *2 (N.D. Cal. Mar. 30, 2009).

5            The better-reasoned approach is to require the named plaintiff to provide her own pre-suit

6    notice to the defendant before bringing a claim for damages under the CLRA. *See, e.g., id.*;

7    *Henderson*, 2011 WL 1050637, at *1; *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *19

8    (N.D. Cal. Mar. 14, 2014).

9            Because Plaintiff admittedly failed to provide such notice to McDonald's, her CLRA

10   claim for damages should be dismissed. Moreover, the dismissal should be with prejudice. *See,*

11   *e.g., Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007). McDonald's

12   argued in its opening brief that dismissal with prejudice is required (Mem. at 14), and Plaintiff

13   failed to respond to this part of McDonald's argument, thereby waiving any opposition to it. *See*

14   *Day v. LSI Corp.*, 705 F. App'x 539, 540-41 (9th Cir. 2017) (plaintiff waived opposition to

15   defendant's argument by not responding to it).

16   **IV.    Plaintiff's Claims for Equitable Relief Must Be Dismissed.**

17           McDonald's demonstrated in its opening brief that Plaintiff's equitable claims must be

18   dismissed for the fundamental reason that Plaintiff has not established that she lacks an adequate

19   remedy at law. (*See* Mem. at 14 ("[A] plaintiff cannot seek equitable relief under these statutes

20   without first establishing that she lacks an adequate remedy at law. Plaintiff has not even

21   attempted to make that showing here.").) Plaintiff does not dispute that she failed to allege that

22   she lacked an adequate remedy at law. (*See* Opp. at 19-20.) Nor could Plaintiff have plausibly

23   alleged that she lacks an adequate remedy at law for her restitution claims, given that she has

24   pleaded a CLRA claim for damages. (Mem. at 16.) This alone is fatal to each of her claims for

25   equitable relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)

26   (dismissing equitable claims because "the operative complaint" failed to "allege that Sonner

27   lacks an adequate legal remedy").

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

12

DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1       In fact, Plaintiff does not contest that her claims for *restitution* must be dismissed under

2    *Sonner* (*see* Opp. at 20-21) and has therefore waived any opposition to this argument. *See Day*,

3    705 F. App'x at 540-41. The Court should dismiss all of Plaintiff's claims to the extent they seek

4    restitution. *See, e.g.*, *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29,

5    2020) (concluding that *Sonner* "requires" dismissal of equitable claims).

6       Instead, Plaintiff's sole response to McDonald's *Sonner* argument is that her equitable

7    claim for *injunctive* relief should survive because "Plaintiff is suffering continual injury." (Opp.

8    at 20.) Plaintiff premises this argument on a series of district court cases that were decided

9    before the Ninth Circuit clarified the law governing claims for equitable relief in *Sonner*. (*See id.*

10    at 20-21 (citing *Spirtos v. Allstate Inc.*, 2003 WL 25900368 at *4 (C.D. Cal. Jan. 10, 2003) and

11    *Deras v. Volkswagen Group of America, Inc.*, 2018 WL 2267448 at *6 (N.D. Cal. May 17,

12    2018)).) Those cases are superseded by *Sonner*.

13       Next, Plaintiff notes that *Sonner* did not involve a claim for injunctive relief. (Opp. at

14    21.) This is true, but it is a distinction without a difference. An injunction is an equitable remedy

15    and the Ninth Circuit expressly held that a claim for equitable relief fails when the plaintiff has

16    not alleged that she lacks an adequate remedy at law. *Sonner*, 971 F.3d at 844. "In fact,

17    numerous courts in this circuit have applied *Sonner* to injunctive relief claims." *In re MacBook*

18    *Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases).

19    McDonald's cited this decision in its opening brief and Plaintiff failed to respond to it. (Opp. at

20    20-21.) Instead, Plaintiff cites a single case that held that *Sonner* did not apply to claims for

21    injunctive relief. (Opp. at 21 (citing *Gross v. Vilore Foods Co.*, 2020 WL 6319131 at *3 (S.D.

22    Cal. Oct. 28, 2020)).) *Gross*, however, represents the minority view, and it cannot be reconciled

23    with the reasoning of *Sonner*. *See In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3.

24       Because Plaintiff has not and cannot allege that she lacks an adequate remedy at law, her

25    equitable claims—both for restitution and injunctive relief—must be dismissed.

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

13
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1

**V.      Plaintiff Lacks Standing to Seek Injunctive Relief.**

2

        As McDonald's established in its opening brief, Plaintiff lacks standing to seek injunctive

3

relief because she can easily determine whether a soft serve product is flavored exclusively with

4

vanilla extract by checking the ingredient list available online or in each McDonald's restaurant.

5

(Mem. at 16-18.) As McDonald's explained, if Plaintiff wants soft serve that is flavored only

6

with vanilla extract, all she has to do is look for a product that lists only vanilla extract and no

7

other flavorings in its ingredient list. (*Id.* at 17.) Plaintiff does not dispute this. (*See* Opp. at 22-

8

23.)

9

        Instead, Plaintiff suggests that she qualifies to seek injunctive relief because she cannot

10

determine whether the Product contains "artificial vanilla flavoring, which was detected with

11

laboratory testing." (*Id.* at 22-23.) In other words, Plaintiff argues that she cannot "determine

12

whether the Product's formulation was changed to remove the artificial vanilla flavoring to

13

comport with the representation of the ice cream as 'Vanilla.'" (*Id.* at 22.) This argument is

14

wrong for several fundamental reasons.

15

        First, as demonstrated above, Plaintiff's "artificial" allegations are not based on a claim

16

that the product contains an actual artificial ingredient, but on Plaintiff's (incorrect) reading of

17

FDA labeling regulations that do not apply to the Product. (*See supra* at 7-8.)

18

        Second, McDonald's does not represent that the Product is "natural" or otherwise makes

19

any representations that suggest that it does not contain artificial flavors.[9] McDonald's simply

20

describes the Product as a "Vanilla Cone," and that is precisely what consumers get. (*See supra*

21

at 2-4.)

22

        Third, once again, if Plaintiff's goal is to find a vanilla soft serve product that is flavored

23

exclusively with vanilla extract, she need only review the product's ingredient list, available on-

24

line or in any McDonald's restaurant. Plaintiff may argue—incorrectly—that certain ingredients

25

in the Product that provide a vanilla flavor should be listed as "artificial flavors," rather than

26

27

---

28

[9] To be clear, the Product does not contain artificial flavors. But McDonald's does not make any
statements to that effect on its menu boards or self-order kiosks.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
MINNEAPOLIS

14
DEFENDANT'S REPLY BRIEF ISO MOTION TO DISMISS COMPLAINT
Case No. 3:20-CV-06533-RS

1  "natural flavors." But either way, the point is that it is easy for Plaintiff to determine whether the

2  Product is flavored exclusively with vanilla extract.

3      Thus, an injunction is unnecessary to protect Plaintiff from being "deceived" again. *See*

4  *Yothers v. JFC Int'l, Inc.*, 2020 WL 5015262, at \*5 (N.D. Cal. May 14, 2020) (dismissing an

5  injunctive relief claim because the plaintiffs now knew, "even if they did not when they

6  purchased defendants' product, that 95–99% of wasabi products sold in North America do not

7  actually contain wasabi," allowing the plaintiffs to "rely on labelling, in particular ingredient

8  lists, to know whether" the wasabi peas they were buying were flavored with real wasabi or

9  horseradish); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at \*4 (N.D. Cal. Aug. 26, 2019)

10  (dismissing an injunctive relief claim because the plaintiffs "need only inspect the ingredient list

11  to discover that the Products do not contain white chocolate").

12                          **CONCLUSION**

13      For the reasons stated above and in its Memorandum of Points and Authorities,

14  McDonald's requests that the Court dismiss Plaintiff's Complaint with prejudice.

15

16  Dated: January 26, 2021            **FAEGRE DRINKER BIDDLE & REATH LLP**

17

18                          By: */s/ Tyler A. Young*

19                              Sarah L. Brew
                               Tyler A. Young

20                              Rory Collins
                               Rita Mansuryan

21

22                          *Attorneys for Defendant*
                           *McDonald's Corporation*

23

24

25

26

27

28